FILED

2020 Aug-14  PM 04:49
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | | |
|---|---|---|
| **MELLISSIA RUSSELL, et al.,** | ] | |
| | ] | |
| **Plaintiffs,** | ] | |
| | ] | |
| **v.** | ] | **4:20-cv-00752-ACA** |
| | ] | |
| **ETHICON INC., et al.,** | ] | |
| | ] | |
| **Defendants.** | ] | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the court is a motion for partial summary judgment and a motion to limit the case-specific testimony of an expert witness, both filed by Defendants Ethicon, Inc., and Johnson & Johnson (collectively, "Ethicon").[1]  (Docs. 38, 40).

Plaintiff Mellissia Russell suffered complications after a physician implanted in her a pelvic mesh product called Prosima, which Ethicon manufactured to treat uterine prolapse.  She and her husband, Plaintiff Greg Russell, filed suit against Ethicon, asserting the following claims:

| | |
|---|---|
| Count One: | Negligence |
| Count Two: | Strict Liability–Manufacturing Defect |
| Count Three: | Strict Liability–Failure to Warn |
| Count Four: | Strict Liability—Defective Product |

---

[1] The Russells have also filed a motion to exclude opinions by one of Ethicon's expert witnesses and a motion to strike some of Ethicon's expert witnesses.  (Docs. 42, 82).  The court will address those motions separately.

| | |
|---|---|
| Count Five: | Strict Liability—Design Defect |
| Count Six: | Common Law Fraud |
| Count Seven: | Fraudulent Concealment |
| Count Eight: | Constructive Fraud |
| Count Nine: | Negligent Misrepresentation |
| Count Ten: | Negligent Infliction of Emotional Distress |
| Count Eleven: | Breach of Express Warranty |
| Count Twelve: | Breach of Implied Warranty |
| Count Thirteen: | Violation of Consumer Protection Laws |
| Count Fourteen: | Gross Negligence |
| Count Fifteen: | Unjust Enrichment |
| Count Sixteen: | Loss of Consortium[2] |

(Doc. 1 at 4–5; Doc. 51-1).

Ethicon seeks summary judgment on part of Count One, Counts Two through Thirteen, and Count Fifteen.  (*See* Doc. 39 at 1).  The Russells do not oppose the grant of summary judgment on Count Two (*see* doc. 44 at 8–9), Count Eleven (*id.* at 16), or Count Thirteen (*id.* at 18).  Accordingly, this memorandum opinion will discuss only the relevant part of Count One, Counts Three through Ten, Count Twelve, and Count Fifteen.

---

[2] The Russells also asserted "claims" for punitive damages (Count Seventeen) and application of the discovery rule (Count Eighteen).  (Doc. 1 at 5).  As Ethicon points out, those are not actually causes of action.  (Doc. 39 at 3 n.2).  The request for punitive damages rises and falls with the survival of the actual causes of action.  And the application of the discovery rule depends on the assertion of a statute of limitations defense, which Ethicon did not do in this motion for summary judgment.  Accordingly, the court will not address those two counts further.

The court **GRANTS IN PART** and **DENIES IN PART** the motion for partial summary judgment.  The court **GRANTS** the motion on Counts Two, Eleven, and Thirteen because the Russells have conceded those claims.  The court **DENIES** the motion on Count One and Count Three because assuming—as Ethicon does—that the warnings it gave were inadequate, a reasonable jury could find that the inadequate warnings caused her injuries.  The court **DENIES** the motion on Counts Four and Five because even if those counts are incorrectly titled, that does not warrant a grant of summary judgment.

The court **DENIES** the motion for summary judgment on Counts Six, Seven, Eight, and Nine, because a reasonable jury could find, based on the testimony of the implanting physician, that he relied at least in part on Ethicon's representations about the safety and efficacy of the Prosima.  The court **GRANTS** the motion on Count Ten because Alabama does not provide a cause of action for negligent infliction of emotional distress.  The court **DENIES** the motion on Count Twelve because although Ethicon accurately states Alabama law on breach of implied warranties, it does not argue that the facts in this case warrant summary judgment.  The court **DENIES** the motion on Count Fifteen because a plaintiff may plead an unjust enrichment claim in the alternative and there is no evidence of an express warranty in this case.

In addition, the court **DENIES** the motion to limit Dr. Rosenzweig' testimony because his opinions are relevant and supported by evidence.

## I.    BACKGROUND

On a motion for summary judgment, the court "draw[s] all inferences and review[s] all evidence in the light most favorable to the non-moving party." *Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316, 1318 (11th Cir. 2012) (quotation marks omitted).  The court will describe the facts underlying the case with all inferences drawn and all evidentiary conflicts resolved in favor of Ms. Russell.

This case arises from the implantation of a pelvic mesh product in women to treat "medical conditions in the female pelvis, primarily pelvic organ prolapse and stress urinary incontinence."  (Doc. 51-1 at 5–6 ¶ 16).  Pelvic organ prolapse is "where the pelvic organs protrude out of the vagina."  (Doc. 44-2 at 15).  Ethicon's product, called Prosima, is a synthetic mesh made out of polypropylene.  (Doc. 51-at 6 ¶ 22; Doc. 51-3 at 6 ¶ 22).

In 2012, Ms. Russell suffered from uterine prolapse and her gynecologist, Dr. Robert Raymond, implanted the Prosima in her.  (Doc. 38-1 at 3; Doc. 44-1 at 57, 128–29; Doc. 44-2 at 49).  In 2015, after experiencing complications from the Prosima, Dr. Nicolisa Massie performed a surgery to correct an issue with the mesh "coming through" Ms. Russell's vaginal wall, and in October 2017, Dr. Massie

performed another surgery to remove the mesh entirely because it had broken apart. (Doc. 38-1 at 4).

Ms. Russell's implanting physician, Dr. Raymond, testified that he was aware of potential complications from implanting mesh, and specifically the Prosima, including pain from intercourse, urinary problems, inflammation, formation of fistulas, neuromuscular problems, and the need for further surgeries to treat adverse events. (Doc. 44-2 at 61–64). He believed that the benefits of the Prosima outweighed the risks of complications. (*Id.* at 66). He also testified that at the time of the deposition, he continued to stand by his decision to offer her the Prosima (*id.* at 78), and he continued to believe that the Prosima was a safe and effective treatment (*id.* at 176). He had not, however, seen Ms. Russell as a patient since about a year and a half after the implanting surgery, and he was not aware of the treatments she had received from other physicians after her last appointment with him in December 2013. (*Id.* at 87–88).

Dr. Raymond went on to testify that although he had read the warnings included in the package insert, he did not review that insert every time he performed surgery. (Doc. 44-2 at 83). He also testified that he did not rely on the information contained in the insert (*id.* at 82), although he also testified that in deciding whether to use the Prosima, he relied on Ethicon's representations about the risks, benefits,

and efficacy of the device in conjunction with journal articles and other sources (*id.* at 103–05, 107–10, 117–18, 120–21, 129–30, 137–39, 147–48, 152–54, 162–64).

## II.   MOTION TO EXCLUDE EXPERT OPINION

Before addressing Ethicon's motion for summary judgment, the court must address its motion to exclude some of the opinions of Dr. Rosenzweig, a pelvic surgeon and urogynecologist who has provided an expert opinion that, among other things, the use of the Prosima caused Ms. Russell's injuries, the Prosima implanted in Ms. Russell underwent degradation and other conditions, and the warnings Ethicon gave about the Prosima were inadequate.  (*See* Doc. 40-1).

Dr. Rosenzweig provided an expert report in which he reviewed and outlined Ms. Russell's medical history relating to the implantation of the Prosima.  (Doc. 40-1 at 6–14).  After the implantation in 2012, Ms. Russell had several urinary tract infections, difficulty and pain urinating, lower back pain and abdominal pain, and painful intercourse.  (*Id.* at 8–14).  In 2015, Dr. Massie examined Ms. Russell and recommended "removal of an area of exposed mesh."  (*Id.* at 11).  The surgical removal indicated "mesh erosion" in three places.  (*Id.* at 11–12).  In 2017, Dr. Massie again assessed Ms. Russell as having mesh erosion.  (*Id.* at 13). Examinations in the months that followed did not reveal any visualizations of mesh, but Dr. Massie eventually performed another surgery to remove pelvic mesh based on Ms. Russell's continued complaints of pain, during which Dr. Massie found

visible mesh that she removed.  (*Id.* at 13–14).  A pathological examination of the removed mesh showed chronic inflammation, fibrosis, and fat necrosis.  (*Id.* at 14). Dr. Rosenzweig testified at a deposition that these results indicated that the mesh had degraded.  (Doc. 46-5 at 16–17).  He also noted that there was evidence of a chronic foreign body reaction, which would cause degradation.  (*Id.* at 18).

Among other things, Dr. Rosenzweig opined that the Prosima is not suitable as a permanent prosthetic implant for pelvic organ prolapse because "the pores are too small, it is a heavy weight mesh, it degrades over time, causes chronic foreign body reactions, fibrotic bridging, mesh contracture/shrinkage, fraying, particle loss, biofilm formation and infections, has sharp edges, ropes, curls, and deforms, and the pores collapse with tension." (Doc. 40-1 at 15).  He opined that these problems with the Prosima "caused and contributed to an exacerbation" of the complications Ms. Russell suffered after the implantation based on the temporal proximity between the implantation and the complications, and because her other medical and surgical history did not cause or exacerbate her symptoms.  (*Id.* at 17–19).

Dr. Rosenzweig asserted that there were "reasonably feasible alternatives available to" the Prosima, such as non-mesh repair, a non-synthetic mesh product, or a product using less polypropylene, and that those alternatives were capable of preventing Ms. Russell's injuries.  (Doc. 40-1 at 20).  Dr. Rosenzweig also opined

that Ethicon's warnings about known risks were inadequate because Ethicon omitted information or minimized the actual risks.  (*Id.* at 15–16, 21).

Ethicon moves, under Federal Rules of Evidence 702 and 703 and the Supreme Court's decision in *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993), to exclude those opinions.  (Doc. 40 at 1–2).  Rule 702 permits a qualified expert to testify about an opinion if (1) the expert's knowledge will help the trier of fact to understand the evidence or determine a fact; (2) "the testimony is based on sufficient facts or data"; (3) "the testimony is the product of reliable principles and methods"; and (4) "the expert has reliably applied the principles and methods to the facts of the case."  Fed. R. Evid. 702; *see also Daubert*, 509 U.S. at 589–93.  The Federal Rules allow an expert to base the opinion on inadmissible facts or data if experts in the field would reasonably rely on those kinds of facts or data. Fed. R. Evid. 703.

The first opinion that Ethicon seeks to exclude is Dr. Rosenzweig's opinion that Ms. Russell would not have been injured if she had undergone a procedure that did not implant synthetic mesh, because alternative procedures would not have caused the same injuries.  (Doc. 41 at 2–4).  Although Ethicon couches this as a *Daubert* issue, it is more akin to a general motion *in limine*.  Ethicon does not challenge Dr. Rosenzweig's qualifications, methodology, or the reliability of his opinion, but instead argues that his opinion does not satisfy Alabama's requirement

that a plaintiff asserting a design defect claim show the existence of a safer alternative design. (*Id.* at 2–3). Ethicon concludes that because a physician decides which medical procedure to use based "on a number of facts beyond Ethicon's control," Dr. Rosenzweig's testimony about alternatives is irrelevant. (*Id.* at 4).

Ethicon is correct that under Alabama law, a plaintiff making a design defect claim must present evidence of a safer, practical, alternative design. *Gen. Motors Corp. v. Jernigan*, 883 So. 2d 646, 662 (Ala. 2003). Dr. Rosenzweig's opinion about the existence of alternative *procedures* would not satisfy that burden, and is therefore irrelevant to the design defect claim. However, evidence that is irrelevant to one claim may be relevant to another, and Ethicon has presented no argument about why the existence of feasible and safer alternative procedures would be irrelevant to the Russells' other claims. The court will not make Ethicon's arguments for it. Accordingly, the court **DENIES** the motion to exclude Dr. Rosenzweig's opinion about whether Ms. Russell would have suffered the same injuries if she had undergone an alternative procedure.

The second opinion that Ethicon seeks to exclude is Dr. Rosenzweig's opinion that the mesh implanted in Ms. Russell degraded and deformed. (Doc. 41 at 4–6). Ethicon contends that there is no medical evidence showing that the mesh showed degradation, deformation, or any other condition after it was removed from Ms. Russell's body. (*Id.* at 5). But Dr. Rosenzweig testified that the pathology

examination done on the mesh removed in 2017 showed degradation and other issues. (*See* Doc. 46-5 at 16–18).  Accordingly, the court **DENIES** the motion to exclude Dr. Rosenzweig's opinion about whether the mesh implanted in Ms. Russell suffered from degradation and other conditions.

The final opinion that Ethicon seeks to exclude is Dr. Rosenzweig's opinion that Ethicon's warnings about the risks of using the Prosima were inadequate.  (Doc. 41 at 6).  Again, this is more akin to a summary judgment argument than a *Daubert* motion: Ethicon does not assert that Dr. Rosenzweig is unqualified to offer that opinion or that he has failed to support it.   Instead, Ethicon argues that Dr. Rosenzweig's opinion is irrelevant because under Alabama's learned intermediary doctrine, the plaintiff must establish that her physician would not have used the Prosima if he had known of the alleged risks, and Ms. Russell's physician testified that he was aware of the risks and decided to use the Prosima anyway.  (Doc. 41 at 6–7).

Because Ethicon repeats this argument in its motion for summary judgment, the court will address the merits of the argument later in this opinion.  Suffice it to say that, even accepting Ethicon's interpretation of Dr. Russell's testimony, his testimony would not establish that Dr. Rosenzweig's opinion is inadmissible. Evidence supporting a claim does not become inadmissible simply because other

evidence might defeat the claim.  Accordingly, the court **DENIES** the motion to exclude Dr. Rosenzweig's testimony about the adequacy of Ethicon's warnings.

### III.   MOTION FOR SUMMARY JUDGMENT

In deciding a motion for summary judgment, the court must determine whether, accepting the evidence in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *see also Hamilton* 80 F.3d 1316, 1318 (11th Cir. 2012).  "[T]here is a genuine issue of material fact if the nonmoving party has produced evidence such that a reasonable factfinder could return a verdict in its favor."  *Looney v. Moore*, 886 F.3d 1058, 1062 (11th Cir. 2018) (quotation marks omitted).  In this case, the parties agree that Alabama law governs all of the claims.  (Doc. 39 at 3–4; Doc. 44 at 1).

As the court mentioned above, the Russells do not oppose summary judgment on Counts Two, Eleven, or Thirteen, and Ethicon does not seek summary judgment on Counts Fourteen and Sixteen.  Accordingly, the court's discussion is limited to the propriety of summary judgment on Counts One, Three through Ten, Twelve, and Fifteen.  For judicial economy, the court will first address Counts Three through Five, then Counts One and Three, followed by Counts Six through Nine, and concluding with the remaining claims.

1.  Strict Liability (Counts Three through Five)

Counts Three, Four and Five assert "strict liability" claims for failure to warn, defective product, and design defect.  (Doc. 51-1 at 28 ¶¶ 103–06, 30 ¶ 111, 31–32 ¶ 116).  Ethicon contends that claims of strict liability are not cognizable under the Alabama Extended Manufacturer's Liability Doctrine ("AEMLD") because that doctrine requires the plaintiff to establish that the manufacturer of the product is at fault.  (Doc. 39 at 4).  Ethicon does not make any argument that the Russells lack evidence from which a reasonable jury could find in their favor; instead, it contends that by calling these counts "strict liability," the claims fail as a matter of law.

"The AEMLD is a judicially created accommodation of Alabama law to the doctrine of strict liability for damage or injuries caused by allegedly defective products."  *Keck v. Dryvit Sys., Inc.*, 830 So. 2d 1, 5 (Ala. 2002); *see also Atkins v. Am. Motors Corp.*, 335 So. 2d 134, 137 (Ala. 1976) (rejecting both the adoption of the Second Restatement of Torts' "pure strict tort theory" and "adherence to the traditional negligence theory of tort liability" for product liability claims).  The Alabama Supreme Court modified the Second Restatement of Torts' theory of strict liability out of concern that a no-fault regime for product liability cases would "impose[ ] liability equally on all 'sellers' without regard to culpability causally related in fact to the defective condition of the product."  *Atkins*, 335 So. 2d at 138.  But in both *Atkins* and another case issued on the same day, the Alabama Supreme

Court stated that in product liability cases where the plaintiff has shown causation, "[l]iability, subject to allowable defenses, attaches solely because the defendant has exposed expected users of a product not reasonably safe to unreasonable risks. When this is shown, scienter is supplied as a matter of law." *Id.* at 141; *see also Casrell v. Altec Indus., Inc.*, 335 So. 2d 128, 132 (Ala. 1976).

Citing *Atkins* and *Casrell*, Ethicon seizes on the master complaint's use of the term "strict liability" in Counts Three through Five to argue that those claims fail as a matter of law. To agree would be to elevate form over substance. The master complaint was drafted for use by thousands of plaintiffs from multiple jurisdictions within the United States, not merely plaintiffs from Alabama. It is clear from the pleading that the "strict liability" claims are in fact product liability claims to which the applicable state law should be applied—in this case, the AEMLD. The court declines to grant summary judgment to Ethicon based solely on the use of the title "strict liability" instead of "AEMLD" or "product liability."

Ethicon makes alternative arguments about the propriety of summary judgment on Count Three, which the court will address next. Ethicon does not, however, make any other arguments about Counts Four and Five. Accordingly, the court **DENIES** the motion for summary judgment as to Counts Four and Five.

2. <u>Negligent Failure to Warn (Count One) and AEMLD Failure to Warn (Count Three)</u>

In Count One, the Russells assert that Ethicon was negligent for, among other things, failing to warn about the risks of implanting them Prosima.[3]  (Doc. 51-1 at 24–29 ¶¶ 91–93).  In Count Three, the Russells assert that Ethicon is liable under the AEMLD for the same failure to warn.  (Doc. 51-1 at 28 ¶ 106).

Under Alabama law, an element common to both a negligent failure-to-warn claim and an AEMLD failure-to-warn claim is the existence of a duty to warn.  *See Walls v. Alpharma USPD, Inc.*, 887 So. 2d 881, 882, 886 (Ala. 2004) (addressing both common law negligence and the AEMLD).  The learned intermediary doctrine provides that in cases involving complex medical devices, "a manufacturer's duty to warn is limited to an obligation to advise the prescribing physician of any potential dangers that may result from the use of its product."  *Id.* at 883 (quotation marks omitted); *see also Morguson v. 3M Co.*, 857 So. 2d 796, 801–02 (Ala. 2003) (plurality opinion) (applying the learned intermediary doctrine to a product liability claim involving a medical device).  Thus, in this case Ethicon had a duty to warn the physicians recommending and using the Prosima, not the patients who ultimately had the Prosima implanted in them.

---

[3] Ethicon does not move for summary judgment on any other part of Count One.

Ethicon does not make any argument that it fulfilled its duty to provide adequate warnings to the implanting physicians.  Instead, it argues that even if the warnings were inadequate, the Russells cannot establish that the inadequate warnings caused Ms. Russell's injuries because Dr. Raymond testified that (1) he did not rely on the Prosima's instructions for use or any safety notices about the Prosima issued by the U.S. Food and Drug Administration; (2) he relied on his own research and practical experience with devices to determine their safety and efficacy; and (3) he continued to believe that the Prosima was a safe and effective treatment for Ms. Russell.   (Doc. 39 at 6–10).   In other words, Ethicon contends that Dr. Raymond's testimony that he did not believe the Prosima to be a defective product defeats the Russells' negligence and AEMLD claims as a matter of law.

Causation is another element that is common to both a negligent failure-to-warn claim and an AEMLD failure-to-warn claim.  *Clarke Indus., Inc. v. Home Indem. Co.*, 591 So. 2d 458, 461 (Ala. 1991).  Ethicon contends that to establish causation for both types of claims, the plaintiff must show that a physician who was adequately warned of the risks would not have used the Prosima.  (Doc. 39 at 10). To support that contention, it relies on the Alabama Supreme Court's decision in *Wyeth, Inc. v. Weeks*, 159 So. 3d 649, 673 (Ala. 2014), *superseded by statute on other grounds, as stated in Forest Labs., LLC v. Feheley*, __ So. 3d __, 2019 WL 5485548, at *13 (Ala. Oct. 25, 2019).  But *Wyeth* was not about either negligence or

the AEMLD; it was a case about fraudulent misrepresentation.  159 So. 3d at 656

("[F]raudulent suppression is a claim separate from an AEMLD claim.  Accordingly,

for purposes of this certified question, we will not treat the Weekses' claims as

AEMLD claims governed by the principles of the AEMLD.") (citation omitted).

Ethicon also cites to various district court cases applying Texas, California,

West Virginia, and Florida law (doc. 39 at 10), and one unpublished Eleventh Circuit

case about the AEMLD, which in turn relied on a published Eleventh Circuit case

discussing Florida's learned intermediary doctrine.  (*Id.* at 6); *Bodie v. Purdue

Pharma Co.*, 236 F. App'x 511, 519 (11th Cir. 2007).  The court does not find those

cases persuasive on the question whether Alabama's learned intermediary doctrine

provides that a physician's testimony that he did not rely on the manufacturer's

representations in deciding whether to use a medical device defeats AEMLD and

negligence claims as a matter of law.

The court is hesitant to make a finding about the effect of such testimony

without briefing specific to Alabama's law on negligence and the AEMLD.  In this

case, the court need not do so, because contrary to Ethicon's contention,

Dr. Raymond testified that he does rely in part on the warnings provided by the

manufacturer and the FDA, although he also reads journal articles and looks at other

sources to determine whether he should recommend the use of a device.  (*See* Doc.

44-2 at 103–20).  Thus, even under Ethicon's theory of liability for failure to warn

claims brought under Alabama law, summary judgment is not warranted.  The court **DENIES** the motion for summary judgment on the failure to warn claims asserted in Counts One and Three.

      3.  <u>Fraud (Six through Nine)</u>

      In Counts Six, Seven, Eight, and Nine, the Russells assert various fraud claims relating to Ethicon's representations about the safety and efficacy of the Prosima. (Doc. 51-1 at 33 ¶ 120, 34–35 ¶ 123, 40 ¶¶ 150–51, 42 ¶ 159, 44 ¶¶ 165–67). Alabama Code § 6-5-101 provides that "[m]isrepresentations of a material fact made willfully to deceive, or recklessly without knowledge, and acted on by the opposite party, or if made by mistake and innocently and acted on by the opposite party, constitute legal fraud."  A party's reasonable reliance on a misrepresentation is an essential element of all fraud claims under Alabama law. *Seward v. Dickerson*, 844 So. 2d 1207, 1210 (Ala. 2002).  Reasonable reliance is the only element of the fraud claims that Ethicon challenges.  (*See* Doc. 39 at 6–11).

      As discussed above in the context of the negligence and AEMLD claims, cases involving complex medical devices implicate the learned intermediary doctrine.  *See Wyeth*, 159 So. 3d at 672–73 (applying the learned intermediary doctrine in a fraud case arising from an allegedly defective prescription drug).  In *Wyeth*, the Alabama Supreme Court explained that "[t]he patient must show that the manufacturer failed to warn the physician of a risk not otherwise known to the

physician and that the failure to warn was the actual and proximate cause of the patient's injury." *Id.* at 673.  In other words, "the patient must show that, but for the false representation made in the warning, the prescribing physician would not have prescribed the medication to his patient." *Id.* at 673–74.

Here, as in the section on the negligence and AEMLD claims, Ethicon argues that Dr. Raymond's testimony establishes a lack of reasonable reliance.  (Doc. 39 at 6–11).  Dr. Raymond's testimony is not as clear as Ethicon argues.  Although he testified that he relied on various sources in deciding whether the Prosima was a safe and effective device that he would recommend to his patients, including Ms. Russell, he also testified that he relies on the manufacturer's disclosures about the risks to be accurate and complete.  (Doc. 44-2 at 101–20).  Ethicon has not argued that its warnings were accurate and complete.  Accordingly, the court cannot find as a matter of law that Dr. Raymond did not reasonably rely, at least in part, on the representations made by Ethicon about the safety and efficacy of the Prosima.  The court **DENIES** the motion for summary judgment on Counts Six, Seven, Eight, and Nine.

### 4.  Negligent Infliction of Emotional Distress (Count Ten)

In Count Ten, the Russells allege that Ethicon is liable for negligent infliction of emotional distress based on injuries caused by the manufacture, design, testing, labeling, marketing, and selling of Prosima.  (Doc. 51-1 at 45 ¶¶ 171–72).  Ethicon

contends that the negligent infliction of emotional distress claim fails because Alabama law does not recognize any such cause of action.  (Doc. 39 at 11).

Ethicon is correct that Alabama does not recognize a cause of action for negligent infliction of emotional distress.  *See Gideon v. Norfolk S. Corp.*, 633 So. 2d 453, 453–54 (Ala. 1994).  Although the plaintiffs can seek damages for emotion distress, they cannot assert negligent infliction of emotional distress as a freestanding cause of action.  Accordingly, the court **GRANTS** Ethicon's motion and **WILL ENTER SUMMARY JUDGMENT** in Ethicon's favor and against the Russells on Count Ten.

> 5.  Breach of Implied Warranty (Count Twelve)

In Count Twelve, the Russells allege that Ethicon breached implied warranties that Prosima was merchantable, safe and fit for its intended use, and adequately tested.  (Doc. 51-1 at 49–50 ¶¶ 189, 193, 195).  Ethicon seeks dismissal of this claim on the basis that where there is no evidence that the product is unfit for its intended use or that it is not merchantable, the AEMLD subsumes any claim for breach of an implied warranty.  (Doc. 39 at 12–13).

Ethicon accurately states the legal rule in Alabama.  *See Spain v. Brown & Williamson Tobacco Corp.*, 872 So. 2d 101, 108 (Ala. 2003).  But to prevail on that argument, Ethicon bears the initial burden of showing the absence of a genuine dispute of material fact.  *See Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th

Cir. 1997).  The burden is not heavy: Ethicon can satisfy it by citing "to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A).  Ethicon has not done that here.  It has not even argued that the Prosima actually is fit for its intended use or that it is merchantable.  (*See* Doc. 39 at 13).  The court cannot grant summary judgment based on an accurate statement of the law if the moving party has not argued that the facts in the case fit that statement of the law.  The court **DENIES** the motion for summary judgment on Count Twelve.

6.  Unjust Enrichment (Count Fifteen)

In Count Fifteen, the Russells assert that Ethicon was unjustly enriched by selling a medical device that is not safe and effective.  (Doc. 51-1 at 55 ¶¶ 222–24). Ethicon asserts that summary judgment is warranted on the unjust enrichment claim because plaintiffs may not assert an unjust enrichment claim together with an express warranty claim.  (Doc. 39 at 11–12).

Under Alabama law, a plaintiff cannot prevail on both an unjust enrichment claim and a breach of contract claim where both claims are based on the same facts and contract.  *Blackmon v. Renasant Bank*, 232 So. 3d 224, 228 n.4 (Ala. 2017). However, federal law permits a plaintiff to plead claims in the alternative.

Fed. R. Civ. P. 8(d)(2), (d)(3).   And although Ethicon challenges the Russells' decision to plead claims that are mutually exclusive, it has not presented any evidence of an express warranty that would extinguish the unjust enrichment claim as a matter of law.[4]   Accordingly, the court **DENIES** the motion for summary judgment on Count Fifteen.

## IV. CONCLUSION

The court **DENIES** the motion to limit Dr. Rosenzweig's case-specific testimony.

The court **GRANTS IN PART** and **DENIES IN PART** Ethicon's motion for summary judgment.   The court **GRANTS** the motion with respect to Counts Two, Ten, Eleven, and Thirteen, and **WILL ENTER SUMMARY JUDGMENT** in favor of Ethicon and against the Russells on those counts.   The court **DENIES** the motion with respect to all other counts.

The court will enter a separate partial judgment in accordance with this memorandum opinion.

**DONE** and **ORDERED** this August 14, 2020.

_____
**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE

---

[4] The court also notes that the Russells have conceded their claim for breach of an express warranty.

21